### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL D. BRAGGS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 15-00174-N** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Michael D. Braggs has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.   By the consent of the parties (*see* Doc. 18), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Doc. 19).

Upon consideration of the parties' briefs (Docs. 14, 15) and the administrative record (Doc. 13) (hereinafter cited as "(R. [page number(s)])"),[1] the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 17, 20).

## I.     <u>Background</u>

On September 20, 2011, Braggs filed applications for DIB and SSI with the Social Security Administration ("SSA"),[2] each alleging disability beginning January 8, 2011.[3]   (R. 21).   After his applications were initially denied, Braggs requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on May 13, 2013.   (R. 21).   On December 23, 2013, the ALJ issued an unfavorable decision on Braggs's applications, finding him "not disabled" under the Social Security Act.   (*See* R. 18 – 33).   Braggs requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review.   The Commissioner's decision on Braggs's applications became final when the Appeals Council denied Braggs's request for review on February 25, 2015.   (R. 1 – 4).   On March 31, 2015, Braggs filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision.   (Doc. 1).   *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy,

---

[2] The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a). The Social Security Act's Supplemental Security Income ('SSI') is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C).

[3] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   <u>Standard of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the

[Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).  *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").  "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid.  Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted).  In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v.*

4

*Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014). *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

can perform given the claimant's RFC, age, education, and work
experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-

(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate

both a qualifying disability and an inability to perform past relevant work." *Moore*,

405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

"In determining whether the claimant has satisfied this initial burden, the

examiner must consider four factors: (1) objective medical facts or clinical findings;

(2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the

claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005

(11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

Cir. 1983) (per curiam)). "These factors must be considered both singly and in

combination. Presence or absence of a single factor is not, in itself, conclusive."

*Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves

that he or she has a qualifying disability and cannot do his or her past relevant

work, it then becomes the Commissioner's burden, at Step Five, to prove that the

claimant is capable—given his or her age, education, and work history—of engaging

in another kind of substantial gainful employment that exists in the national

economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*,

764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although the

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual
steps of this five-step sequential evaluation.

"claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.  In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When, as here, "no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner…" *Ingram*, 496 F.3d at 1262.

### III.    Claims on Judicial Review

1. The ALJ "reversibly erred in failing to assign substantial weight to the opinion of [Braggs]'s treating physician, Otis Harrison, M.D.  Dr. Harrison's opinion is well-supported and is consistent with the other substantial evidence of record."

2. The ALJ "committed reversible error in substituting the opinion of a non-examining, reviewing State agency physician for the opinion of [Braggs]'s treating physician in violation of the Eleventh Circuit case law under *Coleman v. Barnhart* and Social Security Ruling 96-6p."

(Doc. 14 at 1 – 2).

## IV.   <u>Analysis</u>

### A.   **Claim 1**

At Step One, the ALJ determined that Braggs had "not engaged in substantial gainful activity since January 8, 2011, the alleged onset date…" (R. 23). At Step Two, the ALJ determined that Braggs had the following severe impairments: panic disorder, Lortab and Xanax dependence, obesity, arthritis of the hands and wrist, headache disorder, asthma, degenerative disc disease of the lumbar spine and degenerative joint disease, left wrist osteoarthritis, right hemi-diaphragm elevation, bronchitis, and "status post gunshot wounds." (R. 23). At Step Three, the ALJ found that Braggs did not have an impairment or combination of impairments that meets or equals the severity of the specified impairments in the Listing of Impairments.  (R. 24).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Braggs had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b),"[6] with certain limitations: Braggs could lift/carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 4 hours, no more than 45 minutes at a time; could sit for 6 hours, no more than one hour at a time; could frequently push and/or pull with the right upper extremity and occasionally push and/or pull with the upper left extremity; could balance for 4 hours; could occasionally stoop, kneel, and crouch; could never crawl or climb ramps, stairs, ladders, ropes, or scaffolds; could frequently reach, bilaterally; could occasionally handle with the left hand and frequently with the right; could frequently finger with the right hand and occasionally with the left; could continuously feel with the right hand and frequently with the left; could tolerate occasional exposure to extreme heat, extreme

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification …has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Light work is defined as work that 'involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.'…The regulations further state that '[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.' " *Id.* n.5 (quoting 20 C.F.R. § 404.1567(b), which is identical to § 416.967(b)).

cold, and pulmonary irritants; must avoid exposure to unprotected heights and all exposure to dangerous machinery; is limited to simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes; and could sustain concentration and attention for 2 hour periods with customary breaks. (R. 26). Based on this RFC, the ALJ determined that Braggs was "unable to perform any past relevant work…" (R. 31). At Step Five, the ALJ then determined that there exist significant numbers of jobs in the national economy that Braggs can perform given his RFC, age, education, and work experience – specifically, document preparer, surveillance system monitor, call out operator, and election clerk. (R. 31 – 32). Thus, the ALJ found that Braggs was not disabled under the Social Security Act. (R. 32).

Braggs contends that the ALJ erred in assigning less than substantial weight to the opinions of treating physician Dr. Otis Harrison. " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§

404.1527(c)(1)-(2), 416.927(c)(1)-(2)).  "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.  These factors apply to both examining and non-examining physicians."  *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)).  However, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion."  *Bloodsworth*, 703 F.2d at 1240.  *Accord, e.g.*, *Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished).

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' "  *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502).  "Absent 'good cause,' an ALJ is to give the medical

opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'  With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so."  *Id.* (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).  *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).

At Step Four, the ALJ summarized Dr. Harrison's treatment notes and opinions as follows:

> On September 3, 2013, the claimant was examined by Otis Harrison, M.D. in an office visit (Exhibit 16F [(R. 509)]).  Dr. Harrison stated that the claimant has nasal congestion and a sore throat (Exhibit 17F [(R. 510 – 11]).  As to the claimant's physical examination, Dr. Harrison noted, "No acute distress."  (Exhibit 17F).  With regards to the claimant's respiratory examination, Dr. Harrison noted, "Respiratory effort unremarkable.  Lungs clear to auscultation bilaterally."  (Exhibit 17F).  As to the claimant's musculoskeletal examination, Dr. Harrison noted, "*Normal gait; Normal station and stability; Normal inspection, palpation, stability, muscle strength, tone*…" [emphasis added] (Exhibit 17F).  Dr. Harrison determined that the claimant [sic] osteoarthritis in the wrist and degenerative disc disease of the lumbar spine (Exhibit 17F).  Dr. Harrison did not prescribed [sic] any medications (Exhibit 17F). On September 7, 2013 Dr. Harrison completed and signed a Medical Source Statement (Exhibit 16F).  Dr. Harrison stated that the claimant was [sic] low back

> pain, wrist pain and hypertension (Exhibit 16F).  As to the claimant's
> physical activities, Dr. Harrison stated that the a [sic] "increase of
> symptoms to such an extent that bed rest in [sic] necessary."  (Exhibit
> 16F).  Additionally, Dr. Harrison stated that the claimant is unable to
> engage in any gainful employment (Exhibit 16F).

(R. 29).   Fulfilling the requirement that he "state with particularity the weight given to [Dr. Harrison's] medical opinions and the reasons therefor[,]"  *Winschel*, 631 F.3d at 1179, the ALJ found that Dr. Harrison's opinion in the Medical Source Statement (R. 509) "merits no substantial weight" because it "is not consistent with the treatment or examination evidence."  (R. 29).  As noted previously, good cause exists to discount a treating physician's opinion when it is not bolstered by the evidence and is inconsistent with the physician's own medical records.  *Winschel*, 631 F.3d at 1179.  The Eleventh Circuit has recently re-emphasized that courts "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212).

Moreover, substantial evidence supports the ALJ's decision to assign little weight to Dr. Harrison's opinions.  As the ALJ noted with emphasis, Dr. Harrison's opinions – that Braggs's lower back and wrist pain and hypertension precluded him from gainful employment and would be so exacerbated by physical activity so as to necessitate bed rest – were inconsistent with his treatment notes from an examination conducted a mere four days prior, in which he noted "no acute distress," unremarkable respiratory examination, lungs clear to auscultation

bilaterally,[7] and normal gait, station, stability, inspection, palpation, stability, muscle strength, and tone.   Dr. Harrison also prescribed no medication at this examination.  (R. 29, 510 – 511).

Dr. Harrison's opinions were also inconsistent with treatment notes concerning Braggs's physical impairments from several examining, non-treating physicians.  (R. 27 – 29).  Dr. Edward Simms examined Braggs on July 24, 2010, at Springhill Medical Center's emergency room for complaints of pain radiating from Braggs's right flank, noting "no acute distress," no acute disease process based on a portable chest x-ray, a normal sinus rhythm based on an EKG, lungs "clear to auscultation bilaterally," and normal extremities with no obvious deformity.  Dr. Simms administered a Toradol IV, after which Braggs reported he was "feeling much better," and discharged Braggs that same day with a diagnosis of "back pain" and "muscle spasm."  (R. 27 – 28, 345 – 347).  Dr. Simms again examined Braggs on January 6, 2011, when he returned to the emergency room with complaints of left sided chest pain.   Dr. Simms noted "no acute distress'" clear lungs with "no acute respiratory distress;" nontender extremities with normal range of motion and no gross deformities; no joint swelling or instability; and normal blood tests and x-rays. Braggs was discharged the same day with "chest wall pain."  (R. 28, 348 – 352). Braggs again returned to Springhill Medical Center's emergency room on February

---

[7] "Auscultation" is the method of listening to the sounds of the body during a physical examination, usually done using a stethoscope.
(https://www.nlm.nih.gov/medlineplus/ency/article/002226.htm (last visited Mar. 29, 2016)).

5, and March 10, 2011,[8] for complaints of, respectively, shortness of breath and moderate sore throat.  Different physicians examined Braggs on those visits, with their notes indicating unremarkable findings similar to those by Dr. Simms.  (R. 28, 348 – 359).

On March 28, 2012, Braggs visited Dr. Henrietta Kovacs for a consultative physical examination.  Dr. Kovacs noted that Braggs complained of arthritis of the wrist, lower back pain, and difficulty breathing; that his "back and extremities examinations were normal;" that he could "do heel and toe walking and squatting in both phases;" and that other musculoskeletal examination was largely unremarkable, with some limitation in straight leg raising.  Dr. Kovacs opined that Braggs could lift thirty pounds and carry it a short distance; that he could push and pull a grocery cart; that he could not bend but could stoop and squat; that he could reach and kneel; that he could climb stairs but get out of breath; and that he can crawl but not run or jog."  (R. 28 – 29, 401 – 410).  The ALJ assigned "great weight" to Dr. Kovacs's opinions, finding that they "demonstrate that the claimant's physical impairments are not disabling."  (R. 29).

In asserting that "the opinion of Dr. Harrison is supported by the medical evidence of record", Braggs largely points to various diagnoses from the notes of the examining physicians discussed above. (*See* Doc. 14 at 3 – 4).  Tellingly, Braggs offers little discussion of Dr. Harrison's own treatment notes.  Indeed, his brief makes no mention of Dr. Harrison's treatment notes from his September 3, 2013

---

[8] The ALJ's opinion mistakenly identifies the examining doctors as "Dr. Edwards" when discussing the January – March 2011 examinations. (R. 28).

examination (R. 510 – 511), the only treatment notes from Dr. Harrison specifically discussed by the ALJ in rejecting Dr. Harrison's September 7, 2013 Medical Source Statement.   Braggs's only citation to Dr. Harrison's treatment notes are diagnoses of left wrist pain and low back pain at a March 18, 2013 examination (R. 508) and diagnoses of musculoskeletal pain, osteoarthritis of the left wrist, degenerative disc disease of L-5 spine, gastroesophageal reflux disease (GERD), chronic bronchitis, and hypertension at June 17 and July 26, 2013 examinations (R. 504 – 505).   (*See* Doc. 14 at 4).   However, as the ALJ noted, *see supra*, these diagnoses were accounted for in Dr. Harrison's September 3, 2013 treatment notes, which the ALJ determined did not support Dr. Harrison's opinions.

The records Braggs cites indicate, at most, that Braggs has a history of back and wrist pain.   The ALJ did not, however, reject these diagnoses – only Dr. Harrison's opinions as to their limiting effects.   The ALJ articulated good cause for rejecting Dr. Harrison's opinions, substantial evidence supports that finding, and Braggs has not cited any record evidence that compels a different conclusion. Accordingly, the Court **OVERRULES** Braggs's assertion of reversible error in Claim 1.

## B.   Claim 2

At Step Four, the ALJ also determined that "the residual functional capacity in Exhibit 1A and 3A is generally consistent with the treatment and examination evidence and, thus, merits significant weight." (R. 31).   Exhibits 1A (R. 69 – 80) and 3A (R. 82 – 93) are reports prepared by non-examining state agency physician Dr.

Gregory Parker on May 1, 2012, during the initial denial of Braggs's applications. Dr. Parker prepared a proposed RFC in each, finding that Braggs could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could sit, stand and/or walk about 6 hours in an 8-hour workday with normal breaks; could push and/or pull with his left upper extremity only occasionally; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could never limb ladders, ropes, or scaffolds; and could handle and finger with his left hand only occasionally.  (R. 77 – 78, 90 – 91).

Braggs asserts the ALJ improperly rejected the opinion of treating physician Dr. Harrison in favor of non-examiner Dr. Parker's opinion.  It is well established in this Circuit that "[t]he report of a non-examining doctor … , standing alone, cannot constitute substantial evidence." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Spencer on behalf of Spencer v. Heckler*, 765 F.2d 1090, 1093–94 (11th Cir. 1985) (per curiam)).  *Accord Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  However,

> [r]egulations require that an ALJ consider the opinions of non-examining physicians, including state agency [medical] consultants. 20 C.F.R. § 404.1527(f). The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See id*. § 404.1527(d)(3)–(4); *see also Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. 20 C.F.R. § 404.1527(d)(4). The opinion of a non-examining physician is therefore entitled to little weight when it contradicts the opinion of an examining physician. *Lamb v. Bowen, 847 F.2d 698, 703*

(11th Cir. 1988). But where a non-examining physician's assessment does not contradict the examining physician's report, the ALJ does not err in relying on the non-examining physician's report. *See Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir. 1991).

*Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. Apr. 11, 2011) (per curiam) (unpublished).[9]  If an ALJ has shown good cause to reject the opinion of a treating or examining physician, the ALJ may then properly rely on the opinion of a non-examining medical source if it is consistent with the objective evidence of record.  *See Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 743 (11th Cir. Sept. 30, 2011) (per curiam) (unpublished) ("In sum, because the ALJ articulated good cause for discounting the opinions of Flowers's treating and examining doctors and because the consulting doctor's opinion was consistent with the medical record, including the treating and examining doctors's [sic] own clinical findings, the ALJ did not err in giving more weight to the consulting doctor's opinion.").[10]

As explained above, the ALJ articulated good cause to assign little weight to the opinions of Dr. Harrison, and substantial evidence supports that decision.

---

[9] Though 20 C.F.R. § 404.1527 has been amended since *Jarrett* was issued, the amendments have not affected *Jarrett*'s substantive application of that regulation.

[10] *See also* SSR 96-6P (S.S.A. July 2, 1996) ("[T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.  The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant. []In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Moreover, the ALJ did not base his decision on Dr. Parker's opinions alone. As detailed above, the ALJ considered Dr. Harrison's treatment notes and the notes of several examining physicians. He also assigned "great weight" to the opinions of examining physician Dr. Kovacs. The ALJ expressly found Dr. Parker's opinions to be "generally consistent with the treatment and examination evidence," thus meriting "significant weight," and Braggs has given the Court no reason to question this determination. Thus, the ALJ did not err in assigning more weight to non-examining physician Dr. Parker's opinions than to the opinions of Braggs's treating physician. Accordingly, the Court **OVERRULES** Braggs's assertion of reversible error in Claim 2 and finds that the Commissioner's final decision is due to be **AFFIRMED**.[11]

---

[11]       Twice incorrectly referring to it as "Eleventh Circuit case law" (*see* Doc. 14 at 2, 6), Braggs cites this Court's decision in *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003) (Granade, C.J.), for its holding that "the Commissioner's fifth-step burden cannot be met by … the residual functional capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician." 264 F. Supp. 2d at 1010. *Coleman* did not cite any Eleventh Circuit authority in support of this proposition, and "[t]he opinion of a district court carries no precedential weight, even within the same district." *United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam). Moreover, this holding from *Coleman* has since been called into doubt. *See Packer v. Astrue*, Civil Action. No 11-0084-CG-N, 2013 WL 593497, at *2-3 (S.D. Ala. Feb. 14, 2013) (Granade, J.) ("Packer contends that the ALJ's RFC determination is not supported by substantial evidence, inasmuch as the record does not contain a treating or examining medical source's opinion that substantiates the ALJ's RFC. In support of her argument, the Magistrate Judge cites *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003), in which this Court found reversible error where an ALJ's determination was not directly supported by a treating or examining physician's physical capacities evaluation ('PCE'). However, the fact that no treating or examining source submitted such a statement in this case does not, in and of itself, mean that there is no medical evidence, much less no 'substantial evidence,' to support the ALJ's decision." (citing cases disagreeing with and calling into doubt *Coleman*)), *aff'd*, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890 (11th Cir. 2013).
       As this Court has since noted, "[n]othing in the regulations requires the ALJ to accept at least one medical opinion before rendering a decision—indeed, an ALJ may make

## V.     Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued February 25, 2015, denying Braggs's applications for DIB and SSI benefits is **AFFIRMED** under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of March 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

a disability determination without any medical opinion in the record." *Hale v. Colvin*, Civil Action No. 14-00222-CG-N, 2015 WL 3397939, at *11 (S.D. Ala. Apr. 24, 2015) (Nelson, M.J.), *report and recommendation adopted*, 2015 WL 3397628 (S.D. Ala. May 26, 2015) (Granade, J.).  *See also* 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) ("Evidence that you submit or that we obtain **may** contain medical opinions." (emphasis added)).